**LAWRENCE COUNTY, etc., et al.**

v.

**STATE OF SOUTH DAKOTA et al.**

**Civ. No. 80–5045.**

United States District Court,
D. South Dakota.

May 14, 1981.

Craig D. Grotenhouse, Spearfish, S. D., for plaintiffs.

Mark Meierhenry, Atty. Gen., Pierre, Gary Richards, Spearfish, John T. Hughes, Sturgis, A. P. Fuller, Lead, S. D., for defendants.

MEMORANDUM OPINION

BOGUE, Chief Judge.

This matter is a declaratory judgment action in which Plaintiffs have asked this Court to declare a state statute void because it is in direct conflict with a federal statute. Plaintiffs have filed a motion for summary judgment. The parties have stipulated to certain facts and have submitted briefs in support of their positions. They have agreed that this matter can be decided on the basis of these briefs without any further evidentiary hearings being held.

The dispute concerns in lieu of tax payments made by the federal government to

local units of government. On October 10, 1976, Congress passed P.L. 94–565, 31 U.S.C. §§ 1601 *et seq.*, which is known as the Payment in Lieu of Taxes Act. A portion of the Act provides:

> Effective for fiscal years beginning on or after October 1, 1976, the Secretary is authorized and directed to make payments on a fiscal year basis to each unit of local government in which entitlement lands (as defined in section 1606 of this title) are located. Such payments may be used by such unit for any governmental purpose. The amount of such payments shall be computed as provided in section 1602 of this title. 31 U.S.C. § 1601.

Entitlement lands are defined in 31 U.S.C. § 1606 as lands owned by the United States which are within the National Park System, administered by the Secretary of the Interior, dedicated to the use of federal water resource development projects, lands located on Army installations and federal dredge disposal areas. The units of local government designated to receive funds under § 1601 in South Dakota are counties. 42 Fed.Reg. 51,580 (1977).

During the 1979 legislative session, the South Dakota Legislature adopted S.L.1979, ch. 33, § 1, which amended S.D.C.L. 5–11–6. This statute now provides:

> The county auditor shall distribute federal and state payments in lieu of tax proceeds in the same manner as taxes are distributed.

The amendment of S.D.C.L. 5–11–6 became effective on July 1, 1979.

Plaintiffs argue that S.D.C.L. 5–11–6 is in direct conflict with 31 U.S.C. § 1601. Since the effective date of the amended version of S.D.C.L. 5–11–6, Plaintiff Lawrence County has received $128,012 under the provisions of § 1601. Plaintiffs argue that § 1601 allows them to use this money for "any governmental purpose." However, if they are forced to comply with S.D.C.L. 5–11–6, approximately 60 percent of the money they receive will be earmarked for the use of defendant school districts and other special purpose districts.

Defendants contend that the statutes in question do not conflict. Defendants agree with Plaintiffs that § 1601 provides that payments under the Act are to go to counties in South Dakota. However, Defendants disagree with Plaintiffs that § 1601 requires that the counties decide what to do with the money. Defendants argue § 1601 specifies the "point of distribution" for the money while S.D.C.L. 5–11–6 specifies the "plan for distribution" of the money once it reaches the counties. Defendants do not believe that anything in § 1601 prevents the state from exercising control over the expenditure of the funds once they are received by the counties.

The basic question in this case is one of statutory construction. Does § 1601 call for counties to exercise total discretion as to how money received under the Act should be distributed, or does it allow the states to dictate how the money will be distributed?

Although this Court has been unable to locate any case law discussing this question, a study of the Act, the regulations regarding the Act, and the legislative reports and debates concerning the Act's passage leads this Court to conclude that monies received under § 1601 are to be distributed by the counties receiving it in a way they deem proper. Therefore, as far as S.D.C.L. 5–11–6 attempts to order counties how to distribute monies received under § 1601, the statute is void under the Constitution's Supremacy Clause. *See Ray v. Atlantic Richfield Company,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978).

The first place to look whenever there is a question of statutory construction is the statute itself. In this case, the pertinent language in § 1601 states that the "payments may be used by such unit for any governmental purpose." This language, standing alone, does not clearly establish that the counties are to have complete discretion over the expenditure of the money. However, various congressional documents, federal regulations and other sections of the Act establish that Plaintiffs' position is correct.

Plaintiffs point to § 1603 of the Act as support for their position. That section deals with payments for certain lands acquired by the United States since 1968. It provides in part:

The counties, under guidelines established by the Secretary, shall distribute the payments on a proportional basis to those units of local government and affected school districts which have incurred losses of real property taxes due to the acquisition of lands or interests therein for addition to either such system.

Plaintiffs argue, and this Court tends to agree, that if Congress had intended payments under § 1601 to go to school districts and other special purpose district it would have said so as it did in § 1603.

Further support that Congress did not want § 1601 payments earmarked for schools comes from the regulations adopted pursuant to the Act. In defining the term unit of general government, 43 CFR § 1881.0–5(b)(2) states that special purpose units of local government such as school and water districts are not units of general government.

Still further support for this contention comes from the debate on the floor of the House of Representatives where Congressman Quillen of Tennessee commented that the Act,

provides that the payments shall go directly to the units of local government. The funds are not earmarked for specific purposes such as roads or schools. Rather, the local governments are given the discretion to use these moneys as they determine, which is as it should be. 122 Cong. Record, 25742 (1976)

In regard to the above, Defendants argue that although Congress did not desire to earmark the funds for use by special purpose districts, nothing in the Act prevents states from doing so. However, Congressional reports regarding the Act indicate that one of Congress' main concerns was state interference with the payments. One report, in commenting on problems with other revenue sharing statutes stated:

Many of the revenue sharing provisions permit the States to make the decisions on how the funds will be distributed. In far too many States, the result has been that the funds are either kept at the State level and not distributed to local governments at all or are parcelled out in a manner which provides shares to local governments other than those in which the Federal lands are situated and where the impacts of the revenue and fee generating activities are felt. S.Rep.No.1262, 94th Cong., 2d Sess. 9 (1976).

In another report, the House Committee on Interior and Insular Affairs stated:

The present system of shared receipt bears no relationship to the direct or indirect burdens placed on local governments by the presence of Federal lands. Most current payments are restricted to use for construction and maintenance of schools or roads. Yet, local governments provide many additional services such as law enforcement, search, rescue and emergency services, public health, sewage disposal, library, hospital, recreation, and other general local government responsibilities. H.R.Rep.No.1106, 94th Cong., 2d Sess. 6 (1976).

This same report went on to state:

Moreover, the Committee believes that payments under [the Act] should go directly to units of local government since it is the local governments that assume the burden for the tax immunity of these lands. The Committee does not believe these new payments should be restricted or earmarked for use for specific purposes and the bill allows these payments to be used for any governmental purpose. *Id.* at 12.

These reports and the other evidence cited by this Court clearly establish that Congress intended to provide monies under § 1601 to the counties for them to use for their particular needs. If the counties wish to distribute some of the money to school and other special purpose districts, they certainly may. *See Kendall v. Towns County*, 146 Ga.App. 760, 247 S.E.2d 577 (1978). However, they are not compelled to do so.

This Court realizes that the presence of federal lands can also work a hardship upon school districts and others. However, it is not this Court's duty to balance the hardships. Congress has done this and determined that § 1601 payments are to go to the counties to be spent as they see fit.

In *Ray, supra*, 435 U.S. at 158, 98 S.Ct. at 994, the Supreme Court stated:

Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found "where compliance with both federal and state regulations is a physical impossibility . . .," (Citation omitted) or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

To the extent S.D.C.L. 5–11–6 mandates the method of distribution for payments received by counties under § 1601, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Therefore, this Court will grant Plaintiffs' motion for summary judgment and declare that S.D.C.L. 5–11–6 is void as far as payments under 31 U.S.C. § 1601 are concerned.