**ALTUS–DENNING SCHOOL DISTRICT NO. 31, Charleston School District No. 9, Ozark School District No. 14, Pleasant View School District No. 4, All of Franklin County, Arkansas; and, Clarksville School District No. 17, Deer School District No. 21, Lamar School District No. 39, Ozark School District No. 7, All of Johnson County, Arkansas; and, Booneville School District No. 65, Magazine School District No. 15, Paris School District No. 7, Scranton School District No. 22, All of Logan County, Arkansas, Plaintiffs,**

v.

**FRANKLIN COUNTY, Joe W. Powell, County Judge, and Jane Ferguson, County Treasurer; and Johnson County, Bobby Joe Wilkins, County Judge, and F.D. Goza, County Treasurer; and Logan County, Jim Boyd, County Judge, and Roosevelt Robberson, County Treasurer, Defendants.**

Civ. No. 82–2029.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

June 1, 1983.

David Horne, Kincaid, Horne & Trumbo, Fayetteville, Ark., for plaintiffs.

James C. Mainard, Deputy Pros. Atty., Ozark, Ark., for Franklin County, Powell, Johnson County and Wilkins.

Paul X Williams, Jr., Booneville, Ark., for Logan County.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. *Introduction*

This declaratory judgment action was initially filed on January 26, 1982, seeking declaratory and preliminary injunctive relief. On September 24, 1982, plaintiffs filed a motion for preliminary injunction and temporary restraining order. On November 4, 1982, plaintiffs filed an Amended Complaint.

The facts pertinent to the instant action have been stipulated by and between the parties. These facts are as set forth below.

### II. *Facts*

1. The Plaintiffs at all times herein were and are independent school districts duly organized under the laws of the State of Arkansas, with the prerogatives, powers, duties, and privileges provided by law. As such, each Plaintiff School District, under Arkansas law, is a body corporate empowered to contract and be contracted with, sue and be sued in its corporate name and having the right to acquire and hold real estate and all other classes of property. Plaintiffs, as independent school districts, are granted the power of eminent domain to acquire private property for school purposes, and are a governmental entity where its officers, as school board directors, are popularly elected. Further, the Plaintiff School Districts under Arkansas law have a high degree of responsibility to the public with requirements of public reporting and accessibility of their records to public inspection. In addition, the Plaintiff School Districts have the power to levy property taxes, subject to the vote of a majority of the qualified voters. Ark.Stat.Ann. § 80–602 *et seq.,* Ark. Const. amend. 40.

The Plaintiffs, as independent school districts in Arkansas, have physical independence from other local government entities,

with power to determine their own budgets without review and detailed modification by other local officials or governments, to determine taxes to be levied for their support, subject to a vote of a majority of the qualified voters of the district, and to fix and collect charges or to issue debt without review by another local government.

2. That at all times mentioned herein, the Defendant Counties, Franklin, Johnson and Logan, were and are county corporate governments duly organized and existing under the laws of the State of Arkansas, and the Defendants, Joe W. Powell, Bobby Joe Wilkins and Jim Boyd, and their predecessors not named herein, are the County Judges of Franklin, Johnson and Logan Counties in Arkansas, respectively, and the Defendants, Jane Ferguson, F.D. Goza and Roosevelt Robberson, and their predecessors, were and are the County Treasurers of Franklin, Johnson and Logan Counties in Arkansas, respectively.

3. The parties stipulate that counties are units of general government in Arkansas.

4. That the parties hereto seek a determination of the effect of Title 31, U.S.C. §§ 1601 et seq., the Payments in Lieu of Taxes Act, and the validity of 43 C.F.R. § 1881.0–5 as same affect the receipt and distribution of all monies paid to the Defendant Counties in lieu of taxes from the United States under the aforesaid Act for "entitlement lands" as defined in the aforesaid Act.

5. That at all times herein, the State of Arkansas had in effect Ark.Stats.Ann. § 80–726 providing as follows:

80–726. Federal funds—Apportionment to Counties within national forests.—All moneys received by the counties for the support of the public schools from the Federal Government from the income from the National Forests shall be paid by the County Treasurer upon receipt from the State Treasurer only to the school districts which lie only or in part in National Forest boundary lines. The amount of money to be apportioned by the school authorities to the school districts, as herein provided, shall be in pro-portion to the number of acres of National Forest lands lying within the boundaries of each school district.

6. That the Plaintiff School Districts are all school districts whose boundaries lie only or in part within National Forest boundary lines and include National Forest lands within their boundaries as set forth below. That National Forest lands are "entitlement lands" within the meaning of the definition of that term as set forth in 31 U.S.C. §§ 1606 et seq. The number of acres of "entitlement lands" located within the boundaries of each of the Plaintiff School Districts are:

| | National Forest Land | Flood Control Land | Military Land |
|---|---|---|---|
| **A. Logan County** | | | |
| Booneville School District No. 65 | 17,046 Acres | 5,887 Acres | 0 Acres |
| Magazine School District No. 15 | 19,682 Acres | 6,751 Acres | 0 Acres |
| Paris School District No. 7 | 46,300 Acres | 4,600 Acres | 0 Acres |
| Scranton School District No. 22 | 0 Acres | 2,119 Acres | 0 Acres |
| TOTAL | 83,028 Acres | 19,357 Acres | 0 Acres |
| **B. Johnson County** | | | |
| Clarkville School District No. 17 | 4,096 Acres | 4,867 Acres | 0 Acres |
| Deer School District No. 21 | 1,920 Acres | 0 Acres | 0 Acres |
| Lamar School District No. 39 | 85,523 Acres | 7,766 Acres | 0 Acres |
| Ozark School District No. 7 | 87,177 Acres | 0 Acres | 0 Acres |
| TOTAL | 174,716 Acres | 12,633 Acres | 0 Acres |
| **C. Franklin County** | | | |
| Altus-Denning School District No. 31 | 0 Acres | 1,520 Acres | 0 Acres |
| Charleston School District No. 9 | 0 Acres | 0 Acres | 10,932 Acres |
| Ozark School District No. 14 | 87,699.65 Acres | 0 Acres | 0 Acres |
| Pleasant View School District No. 4 | 10,258.02 Acres | 2,828.54 Acres | 0 Acres |
| TOTAL | 97,957.67 Acres | 4,848.54 Acres | 10,932 Acres |

7. That since the passage of the aforesaid Payments in Lieu of Taxes Act, the Defendant Counties, Franklin, Johnson and

Logan, have received payments under said Act for the "entitlement lands" from the Secretary of the Interior of the United States as follows:

|  | Logan County | Franklin County | Johnson County |
|---|---|---|---|
| 1977 | $ 0.00 | $ 52,967.00 | $ 47,017.00 |
| 1978 | 30,428.00 | 30,956.00 | 19,151.00 |
| 1979 | 100,345.00 | 53,606.00 | 184,488.00 |
| 1980 | 64,407.00 | 35,621.00 | 102,998.00 |
| 1981 | 63,100.00 | 71,163.00 | 103,977.00 |
| 1982 | 53,639.00 | 55,157.00 | 87,685.00 |
| TOTAL | $311,919.00 | $299,470.00 | $545,316.00 |

The Defendant Counties, Logan and Johnson, have not paid the aforesaid monies to the Plaintiff School Districts with the exception that Defendant Franklin County distributed the following payments to the following school districts for the year 1980:

|  | 1980 |
|---|---|
| Altus-Denning School District No. 31 | $ 433.86 |
| Charleston School District No. 9 | 3,407.82 |
| Ozark School District No. 14 | 27,338.54 |
| Pleasant View School District No. 4 | 4,079.60 |
| TOTAL | $35,259.82 |

8. That subsequent to effective date of 31 U.S.C. §§ 1601 *et seq.,* October 10, 1976, the Secretary of the Interior of the United States, purporting to act under the authority granted in 31 U.S.C. § 1606(c), adopted 43 C.F.R. § 1881.0–5, effective September 30, 1977. This regulation defined school districts such as those located in the State of Arkansas so as to expressly exclude them from those "units of local government" authorized to receive payments under 31 U.S.C. §§ 1601 *et seq.,* the Payments in Lieu of Taxes Act.

9. The parties stipulate that if the aforesaid 43 C.F.R. § 1881.0–5 is a valid and lawful regulation, then the Defendant Counties have operated lawfully in denying the Plaintiff School Districts the aforesaid "in lieu of tax monies." However, if the Court determines 43 C.F.R. § 1881.0–5 to be invalid and void to the extent it operates to interpret "units of local government" to exclude independent school districts, such as the Plaintiffs in Arkansas, then any of said "in lieu of tax monies" received or to be received by the Defendant Counties should be distributed to those "units of local

government" or "other unit of government below the state which is a unit of general government" as determined on the basis of the same principles as are used by the Bureau of the Census for general statistical purposes. This is the standard set forth in 31 U.S.C. § 1606(c) without the influence of 43 C.F.R. § 1881.0–5, to the extent it [43 C.F.R. § 1881.0–5] purports to exclude independent school districts in Arkansas.

10. That in the event the Court determines 43 C.F.R. § 1881.0–5 to be invalid and void in excluding Plaintiffs as "units of general government," then the Court should determine whether or not the Plaintiffs are a "unit of general government" as determined on the basis of the same principles as are used by the Bureau of Census for general statistical purposes as required by 31 U.S.C. § 1606(c).

11. Bureau of the Census, *1977 Census of Governments, Governments Organizations,* Vol. I, is the United States Department of Commerce publication providing census findings concerning governmental units in existence and the nature of governmental units authorized in each state as of early 1977. *See* page 1, Preface of that publication. The information compiled by the U.S. Bureau of Census on the numbers and nature of governmental units authorized in each state was available to the Bureau of Land Management, U.S. Department of Interior, prior to preparation and adoption of 43 C.F.R. §§ 1881 *et seq.,* on September 23, 1977, and is relied upon by the Bureau of Census.

12. The Plaintiff School Districts, as independent school districts in Arkansas, are considered administratively and physically independent of any other government, and are so classified by the United States Bureau of Census. Further, the Plaintiff School Districts in Arkansas are classified as "property taxing governments" by the United States Bureau of Census. *See* Bureau of the Census, *1977 Census of Governmental Organizations,* Vol. I, at pp. 12 and 13.

13. The definitions and criteria used to define and establish standards for classify-

ing governmental entities by the United States Bureau of Census, including the definition of the term "government" are set forth and discussed in detail at pp. 13–17 of the aforesaid publication.

14. That the aforesaid United States Bureau of Census publication reflects principles used by the Bureau of Census for general statistical purposes.

15. The State and Local Fiscal Assistance Act of 1972, Pub.L. No. 92–512 (31 U.S.C. § 1221 *et seq.*), was in effect at all times herein as a report of the House Ways and Means Committee prepared as H.R.Rep. No. 91–1018, dated April 26, 1972, and compiled prior to the adoption of the aforesaid State and Local Fiscal Assistance Act of 1972. This Act and Report are presently relied upon by the Bureau of Census.

### III. *Discussion*

Plaintiffs advance three principal arguments: (1) That 43 C.F.R. § 1881.0–5 was promulgated in excess of the authority granted under 31 U.S.C. § 1606(c) and is thus void to the extent that said regulation purports to exclude plaintiffs, as Independent School Districts, from those "units of local government" entitled to receive payments in lieu of taxes; (2) that counties in Arkansas are required to distribute the in lieu of tax funds to the plaintiff school districts because they are independent school districts and, as such, constitute affected "units of local government" according to the principles used by the Bureau of the Census; and (3) that the in lieu of tax funds should be distributed by the counties between the counties and school districts in the same ratio provided by millage rates for *ad valorem* tax revenues.

### A.

31 U.S.C. § 1601, Pub.L. No. 94–565, § 1, 90 Stat. 2662, provides:

§ 1601. Payments to local government units; authorization of Secretary; use of funds

Effective for fiscal years beginning on and after October 1, 1976, the Secretary is authorized and directed to make payments on a fiscal year basis to each unit of local government in which entitlement lands (as defined in section 6 [31 USCS § 1606]) are located. Such payments may be used by such unit for any governmental purpose. The amount of such payments shall be computed as provided in section 2 [31 USCS § 1602]. (Oct. 20, 1976, P.L. 94–565, § 1, 90 Stat. 2662.)

The term "unit of local government" is defined in 31 U.S.C. § 1606:

§ 1606. Definitions

As used in this Act, the term—

(a) "entitlement lands" means lands owned by the United States that are—

(1) within the National Park System, the National Forest System, including wilderness areas within each, or any combination thereof, including, but not limited to, lands described in section 2 of the Act referred to in paragraph (7) of section 4 of this Act (16 U.S.C. 577d) [16 USCS § 577d] and the first section of the Act referred to in paragraph (8) [of section 4] of this Act (16 U.S.C. 577d–1) [16 USCS § 577d–1];

(2) administered by the Secretary of the Interior through the Bureau of Land Management;

(3) dedicated to the use of water resource development projects of the United States;

(4) effective October 1, 1978, lands on which are located semiactive or inactive installations, not including industrial installations, retained by the Army for mobilization purposes and for support of reserve component training; or

(5) dredge disposal areas owned by the United States under the jurisdiction of the Army Corps of Engineers;

(b) "Secretary" means the Secretary of the Interior; and

(c) "unit of local government" means a county, parish, township, municipality, borough existing in the State of Alaska on the date of enactment of this Act [enacted Oct. 20, 1976], or other unit of government below the State which is a unit of general government as determined by the Secretary (on the basis of

the same principles as are used by the Bureau of the Census for general statistical purposes). Such term also includes the Commonwealth of Puerto Rico, Guam, and the Virgin Islands.

Clearly, then, "unit of local government" does not include school districts unless the school districts constitute an "other unit of government below the State which is a 'unit of general government'" as determined by the Secretary, utilizing the criteria of the Bureau of the Census for general statistical purposes.

"Unit of general government" is now defined by 43 C.F.R. § 1881.0–5(b)(1):

"Unit of general government" means a unit of that type of government which, within its state, is the principal provider of governmental services affecting the use of entitlement lands. Those services of government include (but are not limited to) maintenance of land records, police protection, fire protection, taxation, land use planning, search and rescue and road construction. Ordinarily, a unit of general government will be a county. However, where a smaller unit of government is the principal provider of governmental services affecting the use of public lands within a state, the smaller unit, even though within a larger unit of government, will be considered a general unit of government and will receive payments under the Act. These units of general government will ordinarily be "towns" or "townships" within states where county governments are non-existent or nearly non-existent.

Section 1881.0–5(b)(2) provides:

The term "unit of general government" excludes single purpose or special purpose units of local government such as school districts or water districts.

Plaintiffs argue that, in drafting section 1881.0–5(b)(2), the Secretary of Interior ignored the directions of Congress to follow the principles of the Bureau of the Census. Although all parties concede that Independent School Districts are "units of local government" under any common understanding of that term, 31 U.S.C. § 1606(c)

does not include school districts within the definition of "units of local government" unless school districts constitute "units of general government."

The parties stipulated that the Bureau of the Census relies upon the Report of the Committee on Ways and Means (H.R.Rep. No. 91–1018) (Stipulation No. 15). The report, at pages 30 and 31, *Government Definitions and Related Rules,* provides:

*Government definitions and related rules.* —A unit of local government, to be taken into account under this subtitle, is a general government of a political subdivision of a State. A unit must have a government (i.e., it must exist as an organized entity, have governmental characteristics and have substantial autonomy)—it is not enough that it have a political boundary. So, for example, election districts and magisterial districts even though they may be used for representation purposes or other electoral purposes will not be considered a unit of local government. Nor, for that matter, will a congressional district or State legislative district be considered such a unit.

Not only must the unit have a government, but also the government must be a general government. In particular, it must not be a special-purpose unit. This definition excludes school districts, special utility districts, library districts, and agencies of local governments, even though these agencies might be relatively autonomous. On the other hand, the definition includes a general government even though it might not perform all of the functions that might be regarded as "municipal" functions or might contract to have some of those functions performed by other entities. In general, the principles used by the Bureau of the Census for general statistical purposes are to be followed to resolve questions that may arise with regard to particular units.

Plaintiffs quite correctly point out that the Bureau of the Census classifies school districts in Arkansas as "local governmental units":

A 1947 act of the State Legislature provided for the reorganization of all Arkansas school districts into a single type of school district. All school districts are classified, for census purposes, as local governmental units. They are governed by elected boards of directors and the school districts may levy taxes and incur bonded indebtedness.

*1977 Census of Governments,* p. 345.

■ However, as noted, this misses the point. The issue is not whether school districts are "units of local government" or "local governmental units" according to the Bureau, but, rather, whether school districts are "units of general government" as defined by the Bureau of the Census. *Only then* would a school district be a "unit of local government" within 31 U.S.C. § 1606(c).

Plaintiffs have submitted numerous authorities for the proposition that the purpose of Congress was, at least in part, to compensate schools for lost revenue. This may well be true. *See* H.R. 9719, 94th Cong.2d Sess. (1976); H.R.Rep. No. 1106, 94th Cong., 2d Sess. 5 (1976); 126 Cong.Rec. H8389–8390 (Aug. 5, 1976) (remarks of Rep. Santini); 122 Cong.Rec. H8391 (Aug. 5, 1976) (Rep. Alexander); 122 Cong.Rec. H8397 (Aug. 5, 1976); 122 Cong.Rec. H8406 (Aug. 5, 1976); S.Rep. No. 1262, 94th Cong., 2d Sess. 9–13 (1976). However, 31 U.S.C. § 1601 provides clearly that "[s]uch payments may be used by such unit *for any governmental purpose*." "Such unit" refers to "unit of local government" as defined in section 1606(c).

Thus, even though Congress no doubt intended for some of the in lieu of tax funds to go to school districts, believing that the counties would disburse these funds with prudence, equity, and an eye to the obvious needs of the school districts, Congress nonetheless expressly allowed whichever unit constitutes the "unit of local government" of 31 U.S.C. § 1606(c) to expend these funds for *any* governmental purpose. In view of the fact that Congress delegated the task of defining those "units of local government" which are not counties, parishes, townships, municipalities, or boroughs in Alaska, to the Secretary of the Interior in accordance with standards established by the Bureau of the Census, it is far from clear that Congress intended school districts, dependent or independent, to constitute "units of local government" as defined in the Act, or "units of general government" as defined by the Secretary.

Without a clearer indication that Congress intended school districts to constitute "units of general government" within the meaning of section 1606(c) so as to be included within the term "unit of local government" in section 1606(c), which it could easily have so declared, either at the time or within the five years subsequent, we can hardly say that the Secretary acted in excess of his authority, unconstitutionally, or otherwise unlawfully.

The question presented is not whether the Secretary's rule is good or bad, wise or unwise, the question is whether the Secretary acted in excess of his authority, unlawfully, or wholly arbitrarily and capriciously. The fault, if any, is that of Congress in not making its intentions more clear, not that of the Department of the Interior in being out of touch with the needs and problems of local government.

The inference that Congress did *not* intend funds received under 31 U.S.C. § 1601 to be distributed to school districts is supported by the fact that in 31 U.S.C. § 1603 Congress provided for payments to be made by the Secretary of the Interior to counties for lands acquired within such counties by the government for the Redwood National Park or acquired for the National Park System or National Forest Wilderness areas. The section 1603 funds are to be distributed on a proportional basis to units of local government and affected school districts. This suggests that Congress, for some inexplicable reason, intended to treat section 1601 funds differently from section 1603 funds.

### B.

■ Plaintiffs also advance the argument that Ark.Stat.Ann. § 80–726 requires

that counties share the 31 U.S.C. § 1601 funds with school districts. Ark.Stat.Ann. § 80–726 provides:

> 80–726. Federal funds—Apportionment to counties within national forests.—All moneys received by the counties for the support of the public schools from the Federal Government from the income from the National Forests shall be paid by the County Treasurer upon receipt from the State Treasurer only to the school districts which lie only or in part in National Forest boundary lines. The amount of money to be apportioned by the school authorities to the school districts, as herein provided, shall be in proportion to the number of acres of National Forest lands lying within the boundaries of each school district. [Acts 1933, No. 104, § 1, p. 324; Pope's Dig., § 11575.]

Assuming, *arguendo,* that section 80–726 applies to 31 U.S.C. § 1601 funds in addition to 16 U.S.C. § 500 funds or other Congressional funds, it is clear that, because of the "any governmental purpose" language of section 1601, section 80–726 conflicts with the Supremacy Clause. U.S. Const. art. 6, cl. 2. This exact issue was litigated in *Lawrence County v. State of South Dakota,* 513 F.Supp. 1040 (D.S.D.1981), *vacated on jurisdictional grounds,* 668 F.2d 27 (8th Cir.1982), with the same conclusion. In *Lawrence County,* the State of South Dakota had enacted a statute that directed the county auditor to distribute federal and state in lieu of tax proceeds in the same manner as taxes are distributed. The Court concluded that funds received under 31 U.S.C. § 1601 may be distributed by the counties for any governmental purpose and, therefore, the state statute violated the Supremacy Clause.

Accordingly, Ark.Stat.Ann. § 80–726 can be of no support to plaintiffs.

### IV. *Conclusion*

Having concluded that the Secretary of the Interior did not act in excess of his authority conferred by 31 U.S.C. § 1606(c) in promulgating 43 C.F.R. § 1881.0–5, and that the affected school districts do not constitute "units of general government" under section 1606(c) and, therefore, cannot qualify as a "unit of local government" for purposes of section 1601, we obviously need not reach the issue concerning the proper distribution ratio between the counties and schools.

Judgment will be entered concurrently in favor of defendants against plaintiffs on their complaint.